MIKE DICAMILLO, Employee Plaintiff v. ARVIN MERITOR, INC., Employer, SELF-INSURED (FRANK GATES CO., Third-Party Administrator), Defendant

No. COA06-1232

(Filed 5 June 2007)

1. **Workers' Compensation— disability—ongoing temporary total disability benefits**

   The Industrial Commission did not err in a workers' compensation case by finding as fact and concluding as a matter of law that plaintiff employee met his burden of proving disability and awarding him ongoing temporary total disability benefits because competent medical evidence was presented through the testimony of a psychiatrist that plaintiff was incapable of working due to his psychiatric condition that was caused or aggravated by his work-related injury.

2. **Workers' Compensation— work-related accident—lower back condition**

   The Industrial Commission did not err in a workers' compensation case by finding as fact and concluding as a matter of law that plaintiff's lower back condition was causally related to his 21 February 2002 work-related accident because, even though competent evidence exists to support a contrary finding, plaintiff presented competent medical evidence through the testimony of an orthopedic surgeon that his back condition was caused, aggravated, or accelerated by his work related injury.

3. **Workers' Compensation— approval of medical treatment within reasonable time—authorized treating physician**

   The Industrial Commission did not err in a workers' compensation case by finding as fact and concluding as a matter of law that plaintiff had requested the Commission to approve his medical treatment with a psychiatrist within a reasonable time and designating the psychiatrist as an authorized treating physician,

DICAMILLO v. ARVIN MERITOR, INC.

[183 N.C. App. 357 (2007)]

because: (1) the Commission has discretion to approve an injured employee's request for approval of a physician; and (2) defendant failed to show the Commission abused its discretion in finding a four-month delay before plaintiff sought authorization of the psychiatrist as a treating physician was reasonable.

**4. Workers' Compensation— findings of fact—consideration of all evidence**

The Industrial Commission did not err in a workers' compensation case by allegedly failing to consider all of the evidence from plaintiff's numerous medical providers before making its findings of fact because the Commissions's findings show it considered all evidence, medical or otherwise, before it rendered its decision.

Appeal by defendant from opinion and award entered 27 June 2006 by Chairman Commissioner Buck Lattimore for the North Carolina Industrial Commission. Heard in the Court of Appeals 8 May 2007.

*Frederick R. Stann, for plaintiff-appellee.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Brian M. Freedman, for defendant-appellant.*

TYSON, Judge.

Arvin Meritor, Inc. ("defendant") appeals from an opinion and award of the Full Commission of the North Carolina Industrial Commission ("the Commission") in favor of Michael Dicamillo ("plaintiff"). We affirm.

## I. Background

Plaintiff was employed with defendant as a forklift operator. On 21 February 2002, plaintiff suffered a compensable injury when a metal rack he was lifting fell, came through the forklift's protective metal framework, and cut his scalp. Plaintiff was taken to Park Ridge Hospital and treated by Dr. Richard S. Broadhurst ("Dr. Broadhurst"). Dr. Broadhurst examined plaintiff and found him to have a scalp laceration. Plaintiff returned to light duty work following the injury. He complained to Dr. Broadhurst of headaches on 25 February and again on 28 February 2002. Dr. Broadhurst concluded plaintiff had suffered a scalp laceration and concussion. On 5 March 2002, plaintiff returned to Dr. Broadhurst, reported feelings

of anxiety while at work, and continued to complain of headaches. On 8 March 2002, plaintiff underwent a CT scan of the head, the results of which were normal.

On 22 March 2002, plaintiff presented to Dr. Daniel Garber ("Dr. Garber"), a neurologist, on referral from Dr. Broadhurst for evaluation of headaches and neck pain. Dr. Garber concluded plaintiff suffered from a combination of cervicogenic headaches and occipital neuralgia. Dr. Garber noted it could take from six months to one year for plaintiff's symptoms to resolve. Plaintiff did not return to Dr. Garber.

Dr. Broadhurst also referred plaintiff to Dr. Terrence Fitzgerald ("Dr. Fitzgerald"), a clinical psychologist, who treated him from March until May 2002. Dr. Fitzgerald diagnosed plaintiff with "somatoform pain disorder associated with chronic headache pain and somatization." Dr. Fitzgerald testified that he did not diagnose plaintiff with post-traumatic stress disorder ("PTSD") because plaintiff did not display the hallmarks of PTSD. Dr. Fitzgerald testified that plaintiff's "anxiety was grounded to fear of getting back up on his vehicle at work, and that apparently had generalized to fear of driving, which was the main focus of what [he] was trying to work with him on."

Plaintiff's final visit with Dr. Fitzgerald occurred on 21 May 2002. Plaintiff cancelled his 30 May 2002 appointment with Dr. Fitzgerald and failed to show for his 17 June 2002 appointment. On 17 June 2002, Dr. Fitzgerald discharged plaintiff at maximum psychologic improvement.

Dr. Broadhurst referred plaintiff to another neurologist, Dr. Sachin Shenoy ("Dr. Shenoy"), who treated plaintiff on 7 August 2002. Dr. Shenoy concluded plaintiff was suffering from post-traumatic headaches and post-traumatic neck pain. She noted plaintiff also displayed post-traumatic cognitive changes, including daytime somnolence. Plaintiff returned to Dr. Shenoy on 29 August 2002 and complained of swelling in his left foot. Dr. Shenoy wrote that the swelling was of unknown etiology, but may result from medications. Plaintiff failed to return to Dr. Shenoy after this date.

On 2 October 2002, plaintiff returned to Dr. Broadhurst and complained of lower back pain. Dr. Broadhurst diagnosed the lower back pain was not causally related to plaintiff's occupational head injury. Plaintiff complained his left leg was painful and swollen and that he

continued to suffer intense headaches. Dr. Broadhurst noted plaintiff had been out of work since 20 September 2002 due to the recommendations of his primary care provider, Todd Stone, PA ("Mr. Stone"). At hearing, plaintiff testified that he was taken out of work by Mr. Stone due to swelling in his legs. Plaintiff has failed to return to work since September 2002.

Plaintiff presented to Dr. Stephen David ("Dr. David"), an orthopedic surgeon, on 8 November 2002 for an evaluation of injuries to his head and neck. Dr. David noted plaintiff weighed 420 pounds and reported prior lumbar spine problems. Dr. David concluded plaintiff had post-concussion syndrome and that his neck, arm, and back symptoms were related to his work injury. Plaintiff was last seen by Dr. David in June 2004.

Dr. David testified that plaintiff's arm, neck, and back problems were caused, aggravated, or accelerated by his 21 February 2002 work related injury. Dr. David assessed plaintiff as having a five percent permanent partial impairment rating to the cervical spine and a two percent permanent partial impairment rating to the lumbar spine. Plaintiff was last seen by Dr. David in June 2004.

Plaintiff was seen by Dr. Laura Fleck ("Dr. Fleck"), a neurologist, on 12 May 2003 on referral from Dr. David. Following her initial evaluation, Dr. Fleck opined that plaintiff had cervical radiculalgia, a pinched nerve in the neck, and lumbosacral radiculalgia, a pinched nerve in the lower back. She concluded these conditions were secondary to degenerative disc disease, which preceded the work-related injury. Following her initial evaluation, Dr. Fleck released plaintiff to a sedentary activity level.

On 10 September 2003, Dr. Fleck referred plaintiff for a work hardening program. On 24 November 2003, Dr. Fleck wrote that plaintiff had completed the work hardening program and underwent a functional capacity evaluation ("FCE"). She wrote that the FCE was invalid because plaintiff was unable to put forth significant effort due to his asserted pain. Dr. Fleck reviewed notes from plaintiff's last week of the work hardening program, which showed him to be functioning at a "high-light to low-medium" capacity. She released him to a "high-light to low-medium level" work according to the United States Department of Labor Guidelines.

Dr. Fleck recommended that plaintiff return to work on a progressive schedule of initially working four hours per day, then six hours per day, then up to eight hours per day with lifting restrictions

of thirty-five pounds. Plaintiff was last treated by Dr. Fleck on 29 December 2003. On that date, plaintiff presented her with a note from Dr. Donald Hazlett ("Dr. Hazlett"), a psychiatrist, who stated plaintiff was unable to work, even on a limited basis, at his previous place of employment because of PTSD and major depression. Dr. Fleck opined that plaintiff was at maximum medical improvement and assessed him with a two percent permanent impairment rating to the neck and a two percent permanent impairment rating to the lumbar spine.

Plaintiff began treatment with Dr. Hazlett on 23 May 2002 without authorization from defendants. Dr. Hazlett diagnosed plaintiff with PTSD and testified this diagnosis was based upon: (1) plaintiff's flashbacks of the occupational accident; (2) the fact that he was "emotionally reliving" that experience; (3) his preoccupation with the accident; (4) irritability; (5) inability to concentrate; and (6) his difficulty sleeping. Dr. Hazlett testified plaintiff's occupational accident precipitated plaintiff's PTSD and worsened his depression. Dr. Hazlett continued to treat plaintiff as of 14 October 2004 when his deposition was obtained.

Defendant accepted plaintiff's head laceration injury as compensable via a Form 60. On 30 September 2002, plaintiff filed a Motion Regarding Medical Treatment with the Commission in which he alleged that he had undergone treatment with Drs. Broadhurst and Fitzgerald and his condition was not improving. Plaintiff prayed the Commission to order defendant to authorize and pay for a second opinion and treatment by another physician and psychologist. By order filed 7 January 2003, the Commission denied plaintiff's motion. Plaintiff filed a Form 33, Request for Hearing, on 14 November 2002.

This case was heard before Deputy Commissioner Ronnie E. Rowell on 10 May 2005. After the hearing, the parties obtained depositions from Dr. Hazlett, Dr. Fleck, Dr. Fitzgerald, Dr. David, and Mr. Stone. Deputy Commissioner Rowell concluded that plaintiff had suffered a compensable injury by accident on 21 February 2002, which resulted in head, neck, lower back, and psychiatric problems and he remained disabled as a result of his injury by accident. Deputy Commissioner Rowell ordered defendant to pay plaintiff temporary total disability benefits at the weekly rate of $566.11 beginning 20 September 2002 and continuing until plaintiff returned to work or until the Commission ordered further. Deputy Commissioner Rowell concluded that Dr. Hazlett was an authorized treating physician and

ordered defendant to pay for the medical treatment necessitated by plaintiff's work accident on 21 February 2002, including treatment from Dr. Hazlett and treatment related to plaintiff's lower back. The Full Commission affirmed Deputy Commissioner Rowell's opinion and award by order filed 27 June 2006. Defendant appeals.

## II.  Issues

Defendant argues the Commission erred by: (1) finding as fact and concluding as a matter of law that plaintiff met his burden of proving disability and awarding him ongoing temporary total disability benefits; (2) finding as fact and concluding as a matter of law that plaintiff's lower back condition was causally related to his 21 February 2002 work related accident; (3) finding as fact and concluding as a matter of law that plaintiff had requested the Commission to approve his medical treatment with Dr. Hazlett within a reasonable time and designating Dr. Hazlett as an authorized treating physician; and (4) failing to consider all of the evidence from plaintiff's numerous medical providers before making its findings of fact.

## III.  Standard of Review

Our review of workers' compensation cases "is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *Barham v. Food World,* 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980) (citing *Byers v. Highway Commission,* 275 N.C. 229, 166 S.E.2d 649 (1969)). This Court neither re-weighs evidence nor assesses credibility of witnesses. *Adams v. AVX Corp.,* 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). "[I]f there is competent evidence to support the findings, they are conclusive on appeal even though there is plenary evidence to support contrary findings." *Oliver v. Lane,* 143 N.C. App. 167, 170, 544 S.E.2d 606, 608 (2001) (citation omitted). "The Commission may weigh the evidence and believe all, none or some of the evidence." *Hawley v. Wayne Dale Constr.,* 146 N.C. App. 423, 428, 552 S.E.2d 269, 272, *disc. rev. denied,* 355 N.C. 211, 558 S.E.2d 868 (2001).

## IV.  Disability

[1] Defendant argues the trial court erred in finding as fact and concluding as a matter of law that plaintiff met his burden of proving disability and awarding him ongoing temporary total disability benefits. We disagree.

## DICAMILLO v. ARVIN MERITOR, INC.

[183 N.C. App. 357 (2007)]

"In workers' compensation cases, a claimant ordinarily has the burden of proving both the existence of his disability and its degree." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (citing *Hall v. Chevrolet Co.*, 263 N.C. 569, 575, 139 S.E.2d 857, 861 (1965)). A plaintiff must show that he was incapable after his injury of earning the same wages he had earned before his injury in the same *or any other employment* and that the incapacity to earn pre-injury wages was caused by the work-related injury. *Id.* (citing *Watkins v. Motor Lines*, 279 N.C. 132, 181 S.E.2d 588 (1971)). A plaintiff may meet this burden in one of four ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).

The Commission made only one finding of fact to support its conclusion that plaintiff is disabled. That finding of fact states:

12. Based upon a review of the evidence in its entirety, it is determined that plaintiff has not unjustifiably refused any job offer by defendant. Plaintiff remains under current treatment for his psychiatric condition, and has not been released to return to work from a psychiatric standpoint.

During deposition, Dr. Hazlett testified as follows regarding plaintiff's ability to work and causation:

Q: Okay. And Doctor, do you have an opinion, satisfactory to yourself and to a reasonable degree of psychiatric certainty, that [plaintiff] is able to perform his past work that he was doing there at Arvin Meritor?

A: He wouldn't be able to do that, absolutely not.

Q: And can you tell us why that is?

A: I think, although I am not the person who is the expert on this particular part of it, his medical condition, but I also think his psychiatric status will not allow him to ever do that again. It will just not happen.

Q: I asked you about his past work there, at Arvin Meritor. But at the present time, do you have an opinion, satisfactory to yourself and to a reasonable degree of psychiatric certainty, that [plaintiff] is, at this time, capable of doing any job in the nearby economy that exists in substantial numbers, on a sustained basis, due to is problem?

A: Not at this point, no.

Q: And could you just give us a brief summary as to why you feel that way?

A: I think because he still does not have normal sleeping and eating patterns, his emotions are not anywhere nearly under control like they should be. His depression tends to rest very close to the surface a lot. And because he is feeling so hopeless and helpless about everything, and also because of his medical issues that seem to be progressing and accumulating also has that same kind of hopelessness about that, that puts him in the position of not really being able to do that. Those are the reasons.

. . . .

Q: [D]o you have an opinion, satisfactory to yourself and to a reasonable degree of psychiatric certainty, that the problems that [plaintiff] is having at this time, that you have already given to us, was caused, aggravated, accelerated or made worse by his work-related accident of 2-21-2002?

. . . .

A: Yes, I do.

Q: And what is that opinion?

A: That this is absolutely true, that it was made worse—it was actually precipitated—the PTSD was precipitated by that accident, clearly, and his depression was absolutely made worse by that particular accident.

Dr. Hazlett testified on cross-examination:

Q: Would you encourage [plaintiff] to try light-duty work or medium work, per Dr. Flek [sic] in her Functional Capacity Evaluation?

A: I don't know—

Q: If it was not in an environment where it was extremely industrial?

A: He might try something like that, but it would have to fit with something that he has in the way of skills, and it would have to be able to be done with adequate treatment of his symptomatology of his PTSD.

The Commission determines the weight and credibility to be afforded to the evidence. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. The Commission's "findings of fact may be set aside on appeal only when there is a complete lack of competent evidence to support them." *Click v. Pilot Freight Carriers*, 300 N.C. 164, 166, 265 S.E.2d 389, 390 (1980). Even though there may be substantial evidence to the contrary, competent medical evidence was presented through the testimony of Dr. Hazlett that plaintiff was incapable of working due to his psychiatric condition that was caused or aggravated by his work-related injury. *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457. This assignment of error is overruled.

## V. Medical Causation

[2] Defendant argues the trial court erred in finding as fact and concluding as a matter of law that plaintiff's lower back condition was causally related to his 21 February 2002 compensable injury. We disagree.

The Commission found as fact:

7. Dr. Stephen David, plaintiff's orthopedic surgeon, and Dr. Laura Fleck, plaintiff's neurologist, disagree on whether a causal relationship exists between plaintiff's low back condition and his February 21, 2002 work accident.

8. Based upon a review of the record evidence, along with medical evidence in its entirety, it is determined that greater weight be given to the opinion of Dr. David, which is that plaintiff's low back problems were caused by, or aggravated/accelerated by his work-related accident of February 21, 2002.

Dr. David first saw plaintiff on 8 November 2002. Plaintiff's chief complaint at that time was neck pain. Plaintiff returned to Dr. David on 20 December 2002 and complained of axial back pain as well as continued neck pain. On 18 February 2003, plaintiff returned to Dr. David and complained chiefly of low back pain. Plaintiff underwent a lumber MRI on 13 March 2003. Dr. David testified that the study revealed spondylolisthesis, degenerative disc disease, and border-line spinal stenosis. A second lumbar MRI was performed in May 2004, which showed severe spinal stenosis and a small disc protrusion at the L3-4 level and moderate spinal stenosis at the L4-5 level. Plaintiff was last seen by Dr. David in June 2004. At deposition, Dr. David testified that plaintiff's "neck, arm and back problems" were caused, aggravated, or accelerated by his 21 February 2002 work-related accident.

As noted, the Commission adjudicates the weight and credibility of the evidence presented. Even though competent evidence exists to support a contrary finding, plaintiff presented competent medical evidence through the testimony of Dr. David that his back condition was caused, aggravated, or accelerated by the 21 February 2002 injury. *Id.* This assignment of error is overruled.

### VI. Authorized Treating Physician

[3] Defendants argue the Commission erred in approving Dr. Hazlett as an authorized treating physician and asserts plaintiff failed to follow the statutory guidelines for obtaining authorization for Dr. Hazlett's services.

The Commission found as fact:

9. Plaintiff sought out medical treatment on his own with Dr. Donald A. Hazlett, a psychiatrist. Plaintiff sought out this treatment due to his dissatisfaction with the other doctors he had been sent to by defendant regarding his psychiatric medical care.

10. Plaintiff has been under Dr. Hazlett's care since May 23, 2002, and currently continues his treatment under Dr. Hazlett. Plaintiff had requested that the Commission approve his treatment with Dr. Hazlett within a reasonable time after he began his treatment with Dr. Hazlett. Plaintiff requested payment for this treatment by motion made September 30, 2002.

N.C. Gen. Stat. § 97-25 (2005) provides:

DICAMILLO v. ARVIN MERITOR, INC.

[183 N.C. App. 357 (2007)]

Medical compensation shall be provided by the employer. . . . The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

In *Schofield v. Great Atl. & Pac. Tea Co.*, our Supreme Court stated the language of the statute "clearly authorizes a change of treatment upon the request of an employee, and presumably a change of treatment would encompass a change of physician." 299 N.C. 582, 590, 264 S.E.2d 56, 62 (1980). An injured employee must obtain approval of the Commission within a reasonable time after he has selected a physician of his own choosing to assume treatment. *Id.* at 593, 264 S.E.2d at 63. Defendant asserts plaintiff had been treating with Dr. Hazlett for four months prior to seeking the authorization and argues plaintiff did not seek authorization from the Commission of Dr. Hazlett as a treating physician within a reasonable time.

"The Commission has discretion to approve an injured employee's request for approval of a physician. This Court will disturb the Commission's determination on this issue only upon a finding of manifest abuse of discretion." *Lakey v. US Airways, Inc.*, 155 N.C. App. 169, 174, 573 S.E.2d 703, 707 (2002). Defendant has failed to show the Commission abused its discretion in finding a four month delay before plaintiff sought authorization of Dr. Hazlett as a treating physician was reasonable. This assignment of error is overruled.

## VII. Consideration of All Evidence

[4] Defendant argues the Commission erred in failing to consider all of the evidence from plaintiff's numerous medical providers before making its findings of fact. Defendant asserts the Commission failed to make findings of fact concerning the opinions of Drs. Broadhurst, Garber, Fitzgerald, Johnson, Rhodes, Dray, and Mr. Stone. We disagree.

"We have repeatedly held 'it is reversible error for the Commission to fail to consider the testimony or records of a treating physician.' " *Gutierrez v. GDX Auto.*, 169 N.C. App. 173, 176, 609 S.E.2d 445, 448 (2005) (quoting *Whitfield v. Lab Corp. of America*, 158 N.C. App. 341, 348, 581 S.E.2d 778, 784 (2003)), *disc. rev. denied,*

DICAMILLO v. ARVIN MERITOR, INC.

[183 N.C. App. 357 (2007)]

359 N.C. 851, 619 S.E.2d 408 (2005). The Commission's opinion and award contains specific findings regarding evidence presented from the aforementioned physicians who treated plaintiff for conditions related to his 21 February 2002 occupational injury. However, the Commission found as fact:

> 8. *Based upon a review of the record evidence, along with medical evidence in its entirety*, it is determined that greater weight be given to the opinion of Dr. David, which is that plaintiff's low back problems were caused by, or aggravated/accelerated by his work-related accident of February 21, 2002.

> . . . .

> 12. *Based upon a review of the evidence in its entirety*, it is determined that plaintiff has not unjustifiably refused any job offer by defendant. Plaintiff remains under current treatment for his psychiatric condition, and has not been released to return to work from a psychiatric standpoint.

(Emphasis supplied). The Commission's findings show it considered all evidence, medical or otherwise, before it rendered its decision. This assignment of error is overruled.

### VIII.  Conclusion

Competent medical evidence was presented through the testimony of Dr. Hazlett to support the Commission's finding and conclusion that plaintiff was psychiatrically disabled. Competent medical evidence was also presented through the testimony of Dr. David that plaintiff's back condition was caused, aggravated, or accelerated by the 21 February 2002 work related injury.

Defendant has failed to show the Commission abused its discretion in finding a four month delay before plaintiff sought the Commission to authorize Dr. Hazlett as a treating physician was unreasonable. The Commission's opinion and award shows it considered all of the competent evidence before it rendered its decision. The opinion and award is affirmed.

Affirmed.

Judges WYNN and CALABRIA concur.